```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION

MAE E. LANIER,                  )
                                )
         Plaintiff,             )
                                )
    v.                          )      No. 4:09 CV 223 DDN
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social Security,)
                                )
         Defendant.             )
```

**MEMORANDUM**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Mae E. Lanier for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401-34. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the court affirms the decision of the Administrative Law Judge (ALJ).

**I. BACKGROUND**

Plaintiff was born on April 1, 1956. On July 7, 2006, she filed an application for disability insurance benefits, alleging an onset date of June 16, 2006, and alleging disability based on polyarthritis affecting multiple joints, obesity, scarring, and alopecia or hair loss. (Tr. 12, 78-80.) Her claim was denied, and she requested a hearing before an ALJ.[1] (Tr. 46-58.)

On June 17, 2008, following a hearing before an ALJ, plaintiff was found not disabled. (Tr. 6-18.) On December 11, 2008, the Appeals Council denied her request for review. (Tr. 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

---

[1]Missouri is one of several test states participating in modifications to the disability determination procedures which apply in this case. 20 C.F.R. §§ 404.906, 404.966 (2007). These modifications include, among other things, the elimination of the reconsideration step. See id.

## II. MEDICAL HISTORY

On June 8, 2006, plaintiff saw David K. Bean, D.O., complaining of hair loss, which began after her hysterectomy three years earlier, severe joint aches, fatigue, and lethargy. Dr. Bean noted her proximal interphalangeal joints (PIP) (finger joints closest to main knuckle) were a little swollen, as were her knees. Dr. Bean referred her to a rheumatologist and dermatologist. (Tr. 146.) Lab tests on June 8, 2006 were negative for rheumatoid arthritis and gout, and her blood work was normal. Her C-reactive protein (CRP), indicating inflammation in the body, was very high. (Tr. 152.)

On June 15, 2006, plaintiff saw Francisco Garriga, M.D., a rheumatologist, complaining of pain in her knees, shoulders, and back. She had lost most of her hair and all hair pigment. (Tr. 173.) Dr. Garriga diagnosed polyarthritis,[2] most likely psoriatic arthritis or lupus. He opined plaintiff would likely require immunosuppressive therapy. (Tr. 178.)

On June 20, 2006, Dr. Garriga completed a Medical Documentation Requirements form wherein he confirmed plaintiff's diagnosis of scarring alopecia and polyarthritis, most likely autoimmune-related. In response to the request for an explanation of the impact of the medical condition on life activities both on and off the job, Dr. Garriga wrote, "Pain will sap her energy level and make it hard for her to concentrate on the job." He further wrote, "I think she's more likely to recover if she's off work. . . . I don't think she needs to be physically restricted." "Any work stress may worsen arthritis. Pain will likely get worse if she cannot devote full time to rest." (Tr. 164.)

On June 30, 2006, Dr. Garriga noted bilateral tenderness of the shoulders, wrists, and fingers and diagnosed arthritis. (Tr. 171.) Tylenol helped a lot. In a note to Dr. Bean, Dr. Garriga restated his diagnosis of polyarthritis, with no improvement thus far. (Tr. 177.)

---

[2]Simultaneous inflammation of several joints. Stedman's Medical Dictionary, 1533 (28th ed. 2006).

On July 28, 2006, plaintiff reported to Dr. Garriga continued joint, hip, shoulder and foot pain, especially at night. (Tr. 170.) Lab tests showed elevated CRP levels on August 28, 2006, November 28, 2006, March 19, 2007, and July 23, 2007. (Tr. 196.) On August 28, 2006, Dr. Garriga diagnosed arthralgia[3] with alopecia and increased CRP levels. (Tr. 191.)

On November 28, 2006, plaintiff reported she was in a lot of pain. Dr. Garriga observed a rash and swelling with tenderness of her wrists and knees. He diagnosed seronegative[4] rheumatoid arthritis. (Tr. 190.)

On March 19, 2007, plaintiff reported she was feeling better and that the cod liver oil she was taking was helping her knees. Dr. Garriga noted her fingers were swollen. (Tr. 189.)

On July 23, 2007, plaintiff was feeling somewhat better, i.e., her fatigue was better and she was doing yoga. (Tr. 188.) In correspondence to Dr. Bean, Dr. Garriga stated plaintiff continued to complain of symmetrical pains and much morning stiffness. On exam Dr. Garriga did not find any swollen joints and again diagnosed seronegative arthritis with alopecia. (Tr. 207.)

On November 26, 2007, Dr. Garriga wrote in a letter to Dr. Bean that plaintiff still has shoulder and neck pain and that her "alopecia is psychologically devastating to her." He stated "she still does not feel bad enough to try immunosupression." He diagnosed alopecia, leukopenia,[5] and elevated CRP. (Tr. 206.)

On March 13, 2008, Dr. Garriga completed a "Physician's Assessment for Social Security Disability Claim" wherein he restated his diagnosis of seronegative rheumatoid arthritis. Plaintiff's symptoms included joint pains, hair loss, tiredness, elevated CRP, and leukopenia. Dr.

---

[3]Severe pain in a joint, especially one not inflammatory in nature. Stedman's at 159.

[4]Lacking an antibody of a specific type in serum. Stedman's at 1754.

[5]Any situation in which the total number of leukocytes in the circulating blood is less than normal. Stedman's at 1077.

-3-

Garriga opined plaintiff would need to rest three hours in an eight-hour work day, and that due to her pain, fatigue, and trouble concentrating, plaintiff may have difficulty understanding, remembering and carrying out instructions, responding appropriately to supervision, co-workers and usual work situations, dealing with changes in a routing work setting, maintaining attention and concentration, and dealing with normal work stresses. He opined that "she cannot be employed 8 hrs a day because of tiredness and pain." (Tr. 186.)

By May 27, 2008, plaintiff was feeling better, but still had pain in her shoulders, hands, wrists, back, and knees. She reported that taking Tylenol helped, as well as prednisone. Dr. Garriga prescribed Celebrex, a non-steroidal anti-inflammatory drug. (Tr. 239.)

On April 22, 2008, following a hearing before an ALJ and at the request of the ALJ, Jack Tippett, M.D., performed a consultative examination. Plaintiff was 61 inches tall and weighed 184 pounds. Dr. Tippett observed plaintiff walked with a slight limp, had mild swelling of the right knee, and decreased bilateral upper extremity strength. (Tr. 211-12.) Examination of her back revealed no significant abnormalities. Neck exam revealed a slight limitation of motion. Dr. Tippett diagnosed multiple joint pains, currently under investigation, most likely due to osteoarthritis.

In a Medical Source Statement, Dr. Tippett limited plaintiff to lifting/carrying up to 10 pounds frequently, and reaching in all directions, handling, fingering, and pushing/pulling to occasionally. (Tr. 215-16.) He opined that plaintiff could sit for 30 minutes, stand for 10 minutes, and walk for 10 minutes at one time. (Tr. 230.) He interpreted an x-ray of the left foot to reveal mild degenerative changes and of the left hand to show mild osteopenia[6] and minimal degenerative changes. (Tr. 222-23.)

---

[6]Decreased calcification or density of bone; reduced bone mass. Stedman's at 1391.

**Testimony at the Hearing**

A hearing was conducted before an ALJ on March 27, 2008. (Tr. 21-43.) Plaintiff testified that she graduated from high school and has had some college accounting. (Tr. 23.) She testified that she worked as a proofreader for about four years and as a bus driver for about two years. Most recently, she worked in customer service for the IRS from 1994 to June 2006 when she left due to illness. (Tr. 24-26.) She testified that she receives disability from the IRS based on her arthritis. (Tr. 28.) On examination by her attorney, plaintiff testified that her pain was a seven or eight on a 10-point scale; that she can walk for half an hour before needing to take a rest; that she has tried stretching and yoga; and that she is most comfortable laying down. (Tr. 31.) She testified that based on her religious beliefs she prefers natural remedies and does not take a lot of drugs because she does not want to become dependant on them. (Tr. 32.) She testified that she gets up at 7:00 a.m. and retires by 9:30 p.m.; that she can hardly move when she gets up in the morning; that she takes a hot bath first thing in the morning; that she has low energy; that she forgets things and has difficulty staying organized; that she can carry something as heavy as a gallon of milk or so; that she lives at her mother's house; that her mother does all of the household chores; and that she spends three hours per day lying down or resting. (Tr. 32-36.)

Vocational expert (VE) Vincent Stock also testified at the hearing. The first hypothetical involved a person who could lift and carry 20 pounds occasionally, 10 pounds frequently; required a sit/stand option; can occasionally climb stairs and ramps, but never ropes, ladders or scaffolds; can occasionally stoop, kneel, crouch and crawl; and should avoid concentrated exposure to extreme cold, vibration, and the hazards of unprotected heights. The VE testified that the plaintiff could return to her past relevant work (PRW) in customer service at the sedentary level, but not at the light level. (Tr. 38-39.) The VE testified that she could perform PRW as a claims proofreader with a sit/stand option. (Tr. 40.)

The second hypothetical was the same except that the weight limitations were lifting 10 pounds occasionally, less than 10 pounds frequently, standing or walking for two hours out of eight, and sitting for six hours. The VE testified that plaintiff's PRW in customer service was available, but that work as a claims proofreader was not, based on plaintiff's testimony that it involved being on her feet for four hours per day. (Tr. 40.) Assuming Dr. Garriga's report, i.e., that plaintiff would need to rest for three hours out of an eight-hour period, the VE testified that plaintiff would not be able to perform any of her PRW. (Tr. 41.)

### III. DECISION OF THE ALJ

On June 17, 2008, the ALJ issued an unfavorable decision. (Tr. 9-18.) The ALJ found plaintiff had severe impairments of osteoarthritis affecting multiple joints and obesity, but that her impairments of scarring and alopecia were non-severe. He found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under the Act. The ALJ concluded plaintiff had the residual functional capacity (RFC) to occasionally lift up to ten pounds and frequently lift no more than 10 pounds; stand or walk no more than two hours out of an eight-hour workday, but she can sit for as many as six hours out of an eight-hour workday; and she is precluded from work that requires she climb ropes, ladders or scaffolds. The ALJ concluded she can perform no more than occasional climbing of stairs and ramps or stooping, kneeling, crouching or crawling and must also avoid concentrated exposure to extreme cold, vibration, or hazardous heights.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. However, he found plaintiff's subjective statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the objective medical records and the RFC assessment. He found plaintiff's testimony regarding memory impairments unsupported by the medical records. The ALJ concluded

plaintiff was able to perform her PRW as a customer service representative, and therefore she was not disabled under the Act.

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and is supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d 935, 942 (8th Cir. 2009). A five-step regulatory framework is used to determine whether an individual qualifies for disability. 20 C.F.R. §§ 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four

requires the Commissioner to consider whether the claimant retains the RFC to perform her PRW.  Id.  The claimant bears the burden of demonstrating she is no longer able to return to her PRW.  Id.  If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work.  Id.

## V. DISCUSSION

Plaintiff argues the ALJ erred in (1) communicating "ex parte" with her treating physician; (2) failing to schedule a supplemental hearing; (3) considering her treating physician's opinion evidence; and (4) considering the credibility of her subjective complaints.

**1. Communicating "ex parte" with treating physician.**

Plaintiff argues the ALJ communicated ex parte with a third party, treating physician Dr. Garriga, in a March 27, 2008 letter requesting additional information.  (Tr. 129-30.)  She argues the ALJ did not provide a copy of this letter to counsel; that counsel was unaware of the communication and the results of the communication until after the ALJ issued an unfavorable hearing decision; and that the ALJ failed to inform her that the claim was being further developed.

The regulations state that a treating physician may be recontacted by an ALJ to obtain additional information regarding an opinion expressed by the physician.  20 C.F.R. § 404.1512(e)(2007). The SSA's Hearing and Litigation Manual (HALLEX) instructs the ALJ to present the evidence and inform Plaintiff that he will be given the opportunity to examine and comment on new evidence.  See HALLEX I-2-7-1.  "When an Administrative Law Judge (ALJ) receives additional evidence after the hearing from a source other than the claimant or the claimant's representative, and proposes to admit the evidence into the record, the ALJ must proffer the evidence.. .")(available at http://www.socialsecurity.gov/ OP_Home/hallex/ I-02/ I-2-7-1.html).  The ALJ "must proffer all post hearing evidence" with some exceptions.  HALLEX I-2-7-30.

-8-

In this case, plaintiff does not show that information was ever received from Dr. Garriga which could have been proffered to him. And no such response from the doctor is indicated by the record. Therefore, the ALJ committed no error.

**2.   Supplemental hearing.**

Plaintiff argues the ALJ erred in failing to schedule a supplemental hearing following her consultative examination with Dr. Tippet. She argues that neither she nor her attorney waived her right to a supplemental hearing, and that the ALJ erred in not scheduling a supplemental hearing or issuing a fully favorable decision. This court disagrees.

SSA's procedures state that evidence received after the hearing must be proffered to the claimant. See HALLEX I-2-7-30, http://www.ssa.gov/OP_Home/hallex/I-02/I-2-7-30.html. Plaintiff's response to the proffer must be addressed in the rationale of the written decision. See id. at H. Further, the procedure states that "[i]f the claimant requests a supplemental hearing, the ALJ must grant the request, unless the ALJ receives additional documentary evidence that supports a fully favorable decision." Id. Therefore, pursuant to HALLEX, it is up to the claimant to request a hearing.

Here, a review of counsel's letter in response to the proffer indicates that counsel did not request a supplemental hearing. (Tr. 75-77.) Therefore, this argument is without merit.

**3.   Treating physician's opinion evidence.**

Plaintiff next argues the ALJ erred in failing to consider the opinion of treating physician Dr. Garriga. Specifically, she argues (1) there is no support for the ALJ's decision that plaintiff can perform sedentary work; (2) the ALJ did not describe the weight he gave to the opinions of Dr. Garriga; and (3) the ALJ rejected the opinions from the treating physician without applying the factors in 20 CFR §§ 404.1527. She argues that Dr. Garriga's opinions should be afforded substantial,

-9-

if not controlling weight, because he has treated plaintiff since her onset date, his specialty is rheumatology, and his opinions are supported by objective, substantial evidence.

The ALJ is required to assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). A treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006). See 20 C.F.R. § 404.1527(d)(2). An ALJ may elect under certain circumstances not to give controlling weight to treating doctors' opinions. A physician's statement that is not supported by diagnoses based on objective evidence will not support a finding of disability. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight. Id.; see also Hacker, 459 F.3d at 937; 20 C.F.R. § 404.1527(d)(2). It is the ALJ's duty to resolve conflicts in the evidence. See Hacker, 459 F.3d at 936.

In this case, the ALJ considered the reports and opinions of Dr. Garriga and noted several inconsistencies when compared to the medical evidence. The ALJ noted that plaintiff commented that her medications seemed to help and that she felt good overall. (Tr. 14, 187, 190.) This is an appropriate reason to discount the treating doctor's opinion. "When a treating physician's notes are inconsistent with his or her residual functional capacity assessment, we decline to give controlling weight to the residual functional capacity assessment." Pirtle v. Astrue, 479 F.3d 931, 933 (8th Cir. 2007); Clevenger v. Astrue., 567 F.3d 971, 975 (8th Cir. 2009)(inconsistency between the questionnaire's description of symptoms and records of treating physicians allowed ALJ to discredit doctor's opinion).

The ALJ construed Dr. Garriga's opinion that plaintiff could not work as Garriga's opinion that plaintiff was "disabled." (Tr. 15.) Such an opinion is a legal issue reserved for the Commissioner. See Samons v. Astrue, 497 F.3d 813, 819 (8th Cir. 2007)("statement that claimant could not work was a conclusory opinion on the ultimate issue of

disability, which is a question for the SSA, not a physician"); SSR 96-5p.

The ALJ also noted that Dr. Garriga had seen plaintiff only once at the time he made his first statement in June 2006. (Tr. 15.) This was properly considered by the ALJ pursuant to the regulations which list the factors the ALJ is permitted to consider. See 20 C.F.R. § 404.1527(d)(2)(I) (2009)(ALJ may consider the length of the treating relationship and the frequency of treatment); see also Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (physician's letter is not entitled to controlling weight as a medical opinion of a treating source because when physician filled out the checklist, she had met with claimant only on three prior occasions).

The ALJ also noted that Dr. Garriga appeared to simply repeat plaintiff's own allegations concerning the severity of her symptoms, without any evidence or explanation for the basis of his opinion. (Tr. 15.) This is also a proper reason to discredit the opinion. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (treating physician's prescribed work restrictions were based on claimant's subjective characterization of her symptoms; because the ALJ determined that the claimant's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less-than-credible statements); Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007)(ALJ was entitled to give less weight to physician's opinion because it was based largely on claimant's subjective complaints, rather than on objective medical evidence).

The regulations specifically require the ALJ to assess the record as a whole to determine whether the treating physicians' opinions are inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The court concludes the ALJ did so here and diminished the weight given Dr. Garriga's opinions for proper reasons.

**4. Credibility of her subjective complaints.**

Plaintiff argues the ALJ failed to properly consider her credibility. Specifically, she argues that the ALJ's reference to Dr. Garriga's notes that plaintiff was "doing well" or feeling "better" is misplaced when determining her credibility or her RFC. Plaintiff also argues the ALJ improperly speculated that she faces a reduction in her Federal Employment Retirement System (FERS) disability benefits if she does not obtain disability from the SSA and that she was therefore incentivized to both apply and qualify for disability benefits. She argues the ALJ erred in failing to mention her prior work history and persistence in seeking medical treatment, and that the fact that she was found disabled by another federal agency supports her credibility.

The ALJ's consideration of the subjective aspects of plaintiff's complaints was consistent with the Commissioner's regulations and policy. See 20 C.F.R. § 404.1529 (2009); SSR 96-7p; see also Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)(discussing the factors that SSA agreed to consider which are incorporated in the current regulations and rulings). Here the ALJ articulated the inconsistencies on which he relied in discrediting plaintiff's subjective complaints. Because those inconsistencies are supported by the record, the credibility finding should be affirmed. See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996).

As to plaintiff's argument that the ALJ did not properly consider her FERS disability payments, the ALJ noted that plaintiff had been found disabled by FERS and that findings of disability by other government agencies must be considered during the SSA disability evaluation process. (Tr. 9-10); See SSR 06-3p. However, the finding that plaintiff is disabled by another agency or organization with different standards and definitions of disability is not controlling on the Commissioner. See 20 C.F.R. § 404.1504 (2009).

With respect to plaintiff's prior work history and persistence in seeking medical treatment, plaintiff's work history did not outweigh the other factors set forth by the ALJ, which plaintiff does not discredit. As noted above, the ALJ considered that plaintiff's medications had been

-12-

effective, and that her condition improved after treatment. (Tr. 14, 187, 190.) At plaintiff's last examination with Dr. Garriga, he noted that plaintiff still complained of pain but that her medications helped. (Tr. 239.) See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (if an impairment can be controlled by treatment or medication, it cannot be considered disabling). The ALJ also noted that plaintiff had not pursued treatment for her alleged mental impairments. (Tr. 14.) See Moad v. Massanari, 260 F.3d 887, 890 (8th Cir. 2001)(failure to seek medical assistance for alleged impairments contradicts subjective complaints of disabling conditions).

The ALJ also considered the objective evidence, including the reports from Dr. Garriga. (Tr. 15, 164-78, 185-208, 239-40.) The ALJ considered the consultative examination with Dr. Tippet, noting the testing conducted by him did not reveal limitations that were supportive of disability. (Tr. 16, 211-12.) See Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (ALJ entitled to find claimant not credible based partly on objective medical evidence); 20 C.F.R. § 404.1529(c)(1)-(2) (2009) (ALJ should look at the medically documented "signs" and findings to determine the intensity and persistence of symptoms).

The ALJ also considered plaintiff's receipt of unemployment insurance benefits. (Tr. 16.) Although plaintiff received these benefits for only a brief period of time, this factor is properly considered. Because an application for unemployment necessarily indicates an ability to work, plaintiff's receipt of unemployment insurance benefits is evidence that negates her claim that she is disabled. See Black v. Apfel, 143 F.3d 383, 387 (8th Cir. 1998).

The ALJ also properly considered plaintiff's obesity. (Tr. 16.) Under SSA policy, obesity is considered the same as other impairments. In this case plaintiff did not have any additional limitations due to her obesity. See Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004) (treating physician did not suggest that obesity imposed any additional work-related limitations); SSR 02-1p (obesity severe when, alone or in combination with another medically determinable physical or mental impairments, it significantly limits an individual's physical or mental ability to work).

The ALJ's consideration of the subjective aspects of plaintiff's complaints was consistent with the regulations at 20 C.F.R. § 404.1529 (2009), SSR 96-7p, and the framework set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). Because the ALJ articulated the inconsistencies on which he relied in discrediting plaintiff's subjective complaints, and because those inconsistencies are supported by the record, the ALJ's credibility finding is affirmed. See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996).

## VI. CONCLUSION

For the reasons set forth above, the court finds that the decision of the ALJ is supported by substantial evidence on the record and is consistent with the Regulations and applicable law. The decision of the Commissioner of Social Security is affirmed. An appropriate judgment order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 15, 2010.